TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
*Attorneys for T.A.T. Property, A Real Estate Grantor Trust*
*Debtor and Debtor-in-Possession*
425 Park Avenue
New York, New York 10022
(212) 754-9400
Barton Nachamie (BN-6732)
Jill L. Makower (JM-4842)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re                                                  :        Chapter 11

T.A.T PROPERTY, a Real Estate          :        Case No. 05-47223(SMB)
Grantor Trust,
                                                           :
                    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

**DEBTOR'S (I) OBJECTION TO INTERIM FEE APPLICATION OF RECEIVER ARTHUR J. KREMER, (II) OBJECTION TO PROOF OF CLAIM OF RECEIVER ARTHUR J. KREMER (CLAIM #14) AND (III) COUNTERCLAIMS FOR MONEY JUDGMENT**

**TO:   THE HONORABLE STUART M. BERNSTEIN**
         **CHIEF UNITED STATES BANKRUPTCY JUDGE**

T.A.T. Property, A Real Estate Grantor Trust, the above-captioned Chapter 11 debtor and debtor-in-possession (the "Debtor"), by its attorneys, Todtman, Nachamie, Spizz & Johns, P.C., submits this (i) Objection to the Interim Fee Application filed by Arthur J. Kremer (the "Receiver"), (ii) Objection to the proof of claim filed by the Receiver docketed by the Court as claim #14 (the "Proof of Claim") and (iii) Counterclaims against

217098.1

the Receiver for a money judgment. In support of these Objections and Counterclaims, the Debtor respectfully represents and alleges as follows:

## I. **DEBTOR'S OBJECTION TO RECEIVER'S INTERIM FEE APPLICATION**

1. The Debtor hereby objects to the Receiver's Interim Fee Application (the "Application"), based on the Receiver's gross mismanagement of the receivership property, negligent conduct and breaches of his fiduciary duties. The Debtor further submits that the Receiver should be held personally liable for his conduct, as set forth in the Debtor's Counterclaims below, which are brought against the Receiver in his individual capacity.

2. In his Application, the Receiver attempts to justify his fees by taking credit for work done by the Debtor and by making various untrue statements regarding lack of cooperation by the Debtor. The Debtor, without the benefit of rent revenues, has been the prime source of day-to-day repairs and cleaning of the Debtor's office building located at 45 Executive Drive, Plainview, New York (the "Property"). Nevertheless, the Receiver has paid William Baker, the Receiver's property manager, $95,000, and Mr. Baker's personal contractor, Marcus Construction, $186,981.52.

3. Although the Debtor's principal, Michael Zenobio, made various requests for a copy of Mr. Baker's management agreement so that he could ascertain Mr. Baker's responsibilities and authority, the Receiver never provided a copy. The Receiver also ignored Mr. Zenobio's requests for evidence of required building permits and contractor insurance certificates. By contrast, Mr. Zenobio provided the Receiver with copies of all documents requested by him that were in the Debtor's possession (other than tax returns which were withheld on the advice of counsel). The Debtor did

not obstruct the Receiver's efforts, but rather, tried to temper the costs of the repairs that needed to be made, recommended contractors that were considerably cheaper than those which the Receiver had chosen, and tried to prevent the Receiver from violating the Town's building laws.

4. The Receiver's statements concerning certain computer equipment are similarly incorrect and misleading. The equipment in question was an electrical power pack and voltage regulator (an Uninterruptible Power Supply system) belonging to the Debtor. That equipment has no relationship to the School Specialties computer equipment; it was not within the Property and not part of any Lease.

5. The financial accounting provided by the Receiver as to the rents collected, demonstrates the Receiver's gross mismanagement. The Receiver has failed to charge and to collect from the tenants at the Property the "Rent and Additional Rent" items due under their leases (e.g., Electric and Heating costs, Real Estate Taxes and HVAC Service Costs). Upon information and belief, the Receiver has failed to collect at least $300,000 of "Additional Rent" and Lease Security which should have been paid by the tenants during the Receiver's tenure. This shortfall has caused serious cash flow problems for the Debtor. The Receiver has also failed to charge two of the tenants with rent at the much higher holdover rate provided in their leases.

6. The Receiver was continued in place after the filing of this Chapter 11 case, pursuant to Bankruptcy Code section 543(d) and Court-approved stipulations between the Debtor, the Receiver and the mortgagee of the Property.

7. Where, as here, a state court receiver is continued in place after the bankruptcy filing, the standards governing compensation of the continued receiver are

not set forth in the Bankruptcy Code. "Unlike the superseded receiver, where the receiver is continued, the Bankruptcy Code does not expressly provide for the reimbursement and compensation of the receiver or his attorneys." In re 245 Associates, 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995). Accord, *In re Posadas Assocs.,* 127 B.R. 278, 280-81 (Bankr. D.N.M. 1991). Although continuation of the receivership implies that the receiver can recover his compensation, reimbursement for expenses and payment of his legal fees from the estate, 245 Associates, 188 B.R. at 749, the Debtor submits that the Receiver should be denied his fees in the instant case.

8. "Once the bankruptcy court continues the receivership under section 543(d)(1), the receiver becomes the functional equivalent of a trustee", 245 Associates, 188 B.R. at 750, citing *In re Uno Broadcasting Corp.,* 167 B.R. at 201, "and owes a trustee's fiduciary duties to all creditors, and assuming solvency, to the debtor's equity security holders." 245 Associates, 188 B.R. at 750, citing Uno Broadway, 167 B.R. at 201; *Posadas Assocs.,* 127 B.R. at 281.

9. A continued receiver has a fiduciary duty to protect and preserve the property under his control. See, e.g., 245 Assoc., 188 B.R. at 748.

10. From the time that the Receiver was appointed by the State Court as receiver, and at all times thereafter, the Receiver has been a fiduciary for all parties that have an interest in the property subject to the receivership.

11. It is well-settled that compensation may be denied to a receiver who has grossly mismanaged the Property entrusted to him.

12. Where costs and expenses have been caused by the negligence of the receiver he can not, in equity, maintain a claim for reimbursement out of the trust fund.

13. A receiver of rents may be surcharged for a deficiency or denied any compensation where the receiver neglects the duties imposed upon him in the order of appointment.

14. The Receiver has not acted with sufficient care and prudence to protect and preserve the property under his control, and has breached his fiduciary duties to all creditors of the Debtor.

15. The Receiver's breaches of fiduciary duty, gross mismanagement and negligence consist of the following misfeasance and nonfeasance, among others:

    a. The Receiver has failed on various occasions to pay property taxes on the Property as they came due. This resulted in the mortgagee paying such unpaid property taxes and charging the Debtor interest on such amounts.

    b. As stated above, the Receiver has failed to charge and to collect from the tenants at the Property at least $300,000 of "Additional Rent" and Lease Security which should have been paid by the tenants during the Receiver's tenure. This shortfall has caused serious cash flow problems for the Debtor. The Receiver has also failed to charge two of the tenants with rent at the much higher holdover rate provided in their leases.

    c. The Receiver has failed to charge or collect from the tenants at the Property the increases in the real property taxes, even while the Receiver has paid an accounting firm substantial sums.

    d. Various contractors that the Receiver hired to perform work at the Property, substantially overcharged the Debtor.

    e. The Receiver caused contractors to place temporary and

unsuitable coverings over a portion of the roof at a cost of approximately $50,000. This work was done without regard to improving the Property or the laws governing such work. Moreover the work performed violates the Building's Certificate of Occupancy by eliminating approximately 30 parking spaces required by the Town of Oyster Bay Approved Plans and Special Use Permits, thereby reducing the amount of space that can be rented in the Building and consequently the value of the Property. To comply with the Approved Plans and to regain the lost parking spaces, the work must be removed and done correctly.

   f. The Receiver has not obtained necessary building permits for work that was done at the Property and work that is still in progress. A search of the Town of Oyster Bay records has evidenced that no notices or filings have been made by the Receiver or his representatives and no plans or permits have ever been filed or approved by the Town concerning the School Specialty installations or the roof, notwithstanding the assurances given by the Receiver to Mr. Zenobio that such permits and approvals were in his possession. The Receiver's failure to insure that the proper building permits were obtained may subject the Debtor to substantial liability and penalties in the future. In addition, it may also cost the Debtor substantial sums to remedy the Receiver's violations of the Building Code.

   g. The Receiver improperly advised tenants that they should not speak with the Debtor's principal, Michael Zenobio, and improperly interfered with the Debtor's efforts to negotiate new leases and renewals. In addition, upon information and belief, the Receiver may have violated the provision of a Court-approved Stipulation which prohibited the Receiver from entering into a lease extension or lease modification

without the prior consent of the Debtor and the mortgagee or without approval of the State Court or the Bankruptcy Court.

        h.     The Receiver wasted property of the receivership by paying a property manager an excessive fee to manage the Property and by paying accountants who, it appears, did not do any significant work.

        i.     The Receiver attempted to settle the Debtor's causes of action against Titleserv, Inc. for an amount that was almost $100,000 less than Titleserv offered the Debtor; which the Debtor refused.

        j.     The Receiver failed to provide the Debtor with an accounting when he became aware of the bankruptcy filing, as required by law. Throughout the Receiver's tenure, the Receiver has not given the Debtor adequate financial information.

16. The Receiver's conduct described above has caused damage to the Debtor, the Debtor's estate and creditors in an amount no less than $300,000.

## II. DEBTOR'S OBJECTION TO RECEIVER'S PROOF OF CLAIM

17. Prior to the Receiver's filing of his Interim Fee Application in the Bankruptcy Court, the Receiver filed his Proof of Claim in the Bankruptcy Court, which was docketed as Claim #14. The Proof of Claim stated an administration claim for $81,940.85 for the period May 19, 2004 through June 27, 2006. It was improper for the Receiver to file the Proof of Claim because the Receiver was required to seek allowance of fees by way of fee application.

18. Accordingly, the Debtor submits that the Receiver's Proof of Claim must be expunged.

## III. DEBTOR'S COUNTERCLAIMS AGAINST THE RECEIVER

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR BREACH OF FIDUCIARY DUTY

19. The Debtor repeats and realleges the allegations set forth in paragraphs 1 through 18 above as if fully set forth herein.

20. A receiver may be held personally liable to persons sustaining lost or injury by or through the receiver's own neglect or misconduct and may be held personally liable for his active or passive negligence. A receiver also may be held liable in his individual capacity when he acts outside the scope of his authority.

21. As the Receiver of the Debtor, the Receiver owed fiduciary duties to the Debtor, the Debtor's estate and creditors to protect and preserve the property subject to the receivership.

22. The Receiver's conduct described in paragraph 15 above, constitutes a breach of the Receiver's fiduciary duties to the Debtor, the Debtor's estate and the Debtor's creditors.

23. The Receiver's breaches of fiduciary duty have damaged the Debtor, its estate and creditors in an amount not less than $300,000.

24. Based on the foregoing, the Debtor demands judgment against the Receiver for compensatory damages as determined by the Court at trial, and no less than $300,000.

### AS AND FOR A SECOND CAUSE OF ACTION
### FOR NEGLIGENCE

25. The Debtor repeats and realleges the allegations set forth in paragraphs 1 through 24 above, as if fully set forth herein.

26. The Receiver's conduct described in paragraph 15 above constitutes

negligence.

27. The Receiver's negligence has damaged the Debtor, its estate and creditors in an amount not less than $300,000.

28. Based on the foregoing, the Debtor demands judgment against the Receiver for compensatory damages as determined by the Court at trial, and no less than $300,000.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR GROSS MISMANAGEMENT

29. The Debtor repeats and realleges the allegations set forth in paragraphs 1 through 28 above, as if fully set forth herein.

30. The Receiver's conduct described in paragraph 15 above constitutes gross mismanagement.

31. The Receiver's gross mismanagement has damaged the Debtor, its estate and creditors in an amount not less than $300,000.

32. Based on the foregoing, the Debtor demands judgment against the Receiver for compensatory damages as determined by the Court at trial, and no less than $300,000.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) deny all compensation to the Receiver on his Interim Fee Application, (ii) expunge the Receiver's Proof of Claim and (iii) grant the following relief on its Counterclaims:

(a) On the First Counterclaim, judgment against the Receiver for compensatory damages as determined by the Court at trial, and no less than $300,000;

(b) On the Second Counterclaim, judgment against the Receiver for compensatory damages as determined by the Court at trial, and no less than $300,000;

(c) On the Third Counterclaim, judgment against the Receiver for compensatory damages as determined by the Court at trial, and no less than $300,000; and

(d) such other further relief as this Court deems just and proper.

Dated: New York, New York
August 25, 2006

                        TODTMAN, NACHAMIE SPIZZ & JOHNS, P.C.
                        Attorneys for T.A.T. Property, A Real Estate
                              Grantor Trust
                        Debtor and Debtor-In-Possession


                        By: s/Barton Nachamie
                            Barton Nachamie (BN-6732)
                        Member of the Firm
                        425 Park Avenue
                        New York, New York  10022
                        (212) 754-9400